UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BONNIE VERBURG,<br><br>                              Plaintiff,<br><br>          -against-<br><br>SCHOLASTIC INC.,<br>RICHARD ROBINSON and<br>ELEANOR BERGER,<br><br>                              Defendants. | Case No. 1:19-cv-10837-JGK<br><br>**SECOND AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Bonnie Verburg ("Plaintiff"), a former employee who was systematically discriminated against by Defendant Scholastic Inc. ("Scholastic"), Scholastic Chairman, President, and CEO Richard Robinson ("Robinson") and Scholastic Executive Vice President and Trade Book Group President Eleanor Berger ("Berger," and together with Robinson, "Defendants") alleges as follows:

## NATURE OF THE CASE

1.      As the world's largest publisher of children's books, Scholastic has been teaching the youth of America how to treat each other with respect and decency for almost one hundred years.  Countless individuals, young and old, base their internal sense of right and wrong on the moral messages internalized from books Scholastic publishes or distributes.

2.      Unfortunately, under the stewardship of Robinson and Berger, Scholastic does not practice the lessons that grace the pages of so many of its wonderful books.  As encouraged, condoned and approved by Robinson and Berger, Scholastic pays its female workers less than their similarly situated male counterparts and culls older employees, actively seeking to put

"somebody younger" in their place and telling those that remain that "[a]t your age, you're lucky to have a job."

3.      Plaintiff Bonnie Verburg was a Vice President and Editorial Director at Scholastic who worked for the company for more than twenty-five years.  During her tenure, she was responsible for acquiring and editing hundreds of titles that have sold over 250 million books.

4.      Verburg was the founder and Editorial Director for Blue Sky Press, the Scholastic imprint that published THE ADVENTURES OF CAPTAIN UNDERPANTS – after Verburg lobbied hard to sign Dav Pilkey as an author.

5.      Books edited by Verburg have won Newbery and Caldecott Honors and inspired millions of children to read.

6.      But as she grew older, Verburg was subject to an ever-increasing chorus of slurs about her age.  Defendant Eleanor "Ellie" Berger, Verburg's supervisor, chided her for acting "like an old person," and said she was "outdated."  Other Scholastic employees told Verburg that the Berger "wants the more younger people here. [sic]."  While discussing promotion strategies for Ms. Verburg's popular "How Do Dinosaurs..." series, Verburg was told that she could pose as the "grandmother of a dinosaur."

7.      In comment after comment from executive after executive, Scholastic made clear to Verburg that the company wanted to "get somebody younger and more dynamic" in her place and that "[a]t your age, you're lucky to have a job."  Over time, responsibilities were taken from Verburg and assigned to younger workers who were seen as more "dynamic" and less "outdated."  Those younger workers were also given larger travel and entertainment budgets to promote their books.  They were also paid bonuses when their books received awards – bonuses that were not paid to Verburg when her books won identical honors.

8.      Finally, Scholastic decided that slurs and harassment were not enough.  On April 10, 2019, the Chairman, President, and CEO of Scholastic, Defendant Robinson, summoned Verburg to his private conference room.  There he told her that she was being fired.  Despite more than a quarter century of exemplary contributions to the business, Verburg was given absolutely no reason why she was losing her job.  But when Verburg asked whether Scholastic was terminating any other employees, Robinson quickly admitted that the company had also decided to terminate other older employees.

9.      Verburg was terminated on June 1, 2019.

10.      After Verburg was terminated, she then discovered a dark secret about her job. Verburg learned that her male colleagues, people who had identical jobs to hers, had for decades been paid hundreds of thousands of dollars more per year than she was.  As a policy, Scholastic under Robinson and Berger systematically underpays its female workers, giving them less in each and every paycheck for the same work performed by men.

11.      Verburg now seeks to hold Defendants accountable by bringing age and gender discrimination claims under California and New York laws, labor law violation claims under the California Labor Code Private Attorneys General Act of 2004 ("PAGA"), and Equal Pay Act claims under the Equal Pay Act of 1963 and related California statutes.

12.      The statute of limitations on Equal Pay Act claims is just three years but, upon information and belief, Verburg was discriminated against for over 20 years.

13.      For example, Ken Geist, whose title is also Vice President, Editorial Director, earns far more than Verburg.  Geist and Verburg were both the heads of their own imprints at Scholastic and had the exact same title.  They both reported to the same supervisor in the New York office:  Defendant Berger.

14.     The difference in pay between Geist and Verburg was not due to seniority, because Verburg started in 1992 and Geist started in 2001.

15.     As it turns out, in 2001, when Geist was hired, he was paid over $250,000 and Verburg was paid less than $190,000.

16.     The difference in pay between Geist and Verburg was also not due to merit, quantity, or quality of production because, in 2001, when Geist was hired, Verburg had, among other things, acquired THE ADVENTURES OF CAPTAIN UNDERPANTS and was the editor of two books that had received back-to-back Caldecott Honors.  NO, DAVID! received the honor in 1999 and WHEN SOPHIE GETS ANGRY received the honor in 2000.

17.     Geist was paid more even though he had accomplished far less in his career.  But he was a man.  And under Robinson and Berger, Scholastic pays men more – even when they accomplish less than similarly situated women.

18.     Predictably, Geist and Verburg's pay differential compounded over time.   By 2018, Geist earned over $380,000 per year but Verburg's 2018 salary was just $193,950.

19.     Similarly, Arthur Levine, David Saylor, Barry Cunnigham, and David Levithan, are other Scholastic employees who had jobs very similar to Verburg and/or shared a title with Verburg.  Upon information and belief, each of these male employees earned between $100,000 to $300,000 more per year than Verburg made.

20.     Prior to filing this lawsuit, Verburg asked Scholastic to share salary information for these male employees but Scholastic refused.

21.     There can be no performance-based explanation for the pay difference between these men and Verburg because: (i) they all started at higher salaries than Verburg; and (ii) they

made more money than Verburg year after year, regardless of merit, quantity, or quality of production.

22.     Perhaps hoping to avoid scrutiny for its unlawful behavior, Scholastic tried to get Verburg to sign a Separation Agreement releasing her claims against Scholastic.  However, in order to induce Verburg to sign the Separation Agreement, Scholastic violated California and federal law by refusing to pay Verburg the separation pay that she was entitled to or for unused vacation days unless she signed a release of all claims against Scholastic.

23.     After learning that she had been systematically underpaid for decades simply because she was a woman, Verburg refused to sign the release and filed this lawsuit for Scholastic's willful violation of the laws requiring men and women to be paid the same amount for substantially similar work.

## THE PARTIES

24.     Plaintiff Bonnie Verburg is an individual residing in Los Angeles, California.

25.     Defendant Scholastic is a corporation organized under the laws of New York with its principal place of business at 557 Broadway, New York, New York 10012.

26.     Defendant Scholastic Inc. is registered to do business as a foreign corporation in California, with the California Corporate Number C0481213.

27.     At all relevant times, Defendant Richard Robinson was Chairman of the Board of Scholastic, its President, and its Chief Executive Officer and worked out of Scholastic's New York office.  Upon information and belief, Robinson resides in New York, New York.

28.     Robinson or members of his immediate family own all of Scholastic's Class A voting stock.

29.     25.     Through his ownership and/or control of Scholastic's Class A voting stock, Robinson is able to elect four fifths of Scholastic's Board of Directors.  Without the approval of the Scholastic's other stockholders, he is able to effect or block any Scholastic action requiring stockholder approval.

30.     26.     At all relevant times, Robinson had operational control over the day-to-day operations of Scholastic, controlled significant functions of Scholastic's business, and had authority to hire and fire Scholastic employees with jobs that were substantially similar to Ms. Verburg or shared a title with her.

31.     At all relevant times, Defendant Eleanor "Ellie" Berger was Executive Vice President and Trade Book Group President at Scholastic, Plaintiff's supervisor and/or manager, and worked out of Scholastic's New York office.  Upon information and belief, Berger resides in New York, New York.

32.     As Executive Vice President and President, Trade Book Group at Scholastic, Berger oversaw the division at Scholastic responsible for publishing books for a general audience.  At all relevant times, Berger had operational control over the day-to-day operations of Scholastic's Trade Book Group, and determined salaries for and had authority to hire and fire Scholastic employees with jobs that were substantially similar to Ms. Verburg or shared a title with her.

## JURISDICTION AND VENUE

33.     The Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1332(a)(1), as it involves claims arising under federal statutes, specifically The Equal Pay Act of 1963, 28 U.S.C. §§ 1331.

34.     The Court has supplemental jurisdiction over the claims arising from state law pursuant to 28 U.S.C. § 1367.

35.     In addition, this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that (a) Plaintiff is a resident of California and Defendants are residents of New York, and (b) the matter in controversy exceeds $75,000, exclusive of interest and costs.

36.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f) because (i) Defendants reside in this district; and (ii) a substantial part of the events underlying this action occurred in this District.

## FACTS

**A.     Background**

37.     Scholastic is the world's largest publisher and distributor of children's books, with revenues of $1.65 billion in 2018.   With offices in more than thirteen countries, Scholastic publishes one out of every two children's books sold in the United States.

38.     Scholastic distributes many widely known children's and young adult books, such as the HARRY POTTER series, the DIARY OF A WIMPY KID series, and dozens of perennial classics such as GOODNIGHT MOON and BROWN BEAR BROWN BEAR WHAT DO YOU SEE?

39.     Verburg worked at Scholastic from 1992 until June 1, 2019, serving as a Vice President and Editorial Director.

40.     For her final decade at Scholastic, Verburg's direct and only supervisor was Defendant Berger.

41.     Over his long career running Scholastic, Robinson has been a very hands-on leader, and makes a point of staying involved with every aspect of the company.   Robinson

personally interviewed and hired Verburg. Throughout Verburg's 27 years at Scholastic, Robinson and Verburg were in regular contact about her work and career.

42.     During her quarter century at Scholastic, Verburg was responsible for acquiring, developing, editing, and shaping the books and careers of many of the company's most celebrated authors, including such blockbuster titles/series as THE ADVENTURES OF CAPTAIN UNDERPANTS by Dav Pilkey; HOW DO DINOSAURS SAY GOOD NIGHT? by Jane Yolen; and NO, DAVID! by David Shannon.

43.     Books published and distributed under Verburg's supervision have earned the highest honors in children's publishing, including the coveted Newbery and Caldecott Honors.

44.     Verburg also built Scholastic's trade division into a major player, attracting top editors such as Arthur Levine, who acquired the U.S. rights to the HARRY POTTER series. Verburg's work transformed the Trade Book Group and built the economic backbone for Scholastic's financial performance.

45.     In her time at Scholastic, Verburg never received a negative performance review.

46.     Indeed, Verburg's supervisors and colleagues were inspired by her exceptional talents and drive to bring high quality books to children in the United States and abroad. Verburg's books have performed extraordinarily well in markets such as China and South Korea, which have experienced enormous growth over the past decade.

47.     Verburg was passionate about her work. On her LinkedIn page, she described her job as follows:

> I have the happiest career in the entire world! Publishing children's books is like waking up every day as president of the Optimism Club. Truly there are no words that express my gratitude. I had the incredible gift of founding The Blue Sky Press in 1992 and launched it in Fall 1993 with books by Newbery Medalists Virginia Hamilton, Cynthia Rylant, and Nancy Willard along with Caldecott

> Medalists Leo & Diane Dillon and National Book Award-winner
> Barry Moser--and a writer new to children's books: Rodman
> Philbrick, with his now-classic FREAK THE MIGHTY. Do you
> believe in miracles? I do! That was 26 years ago. From acquiring
> THE ADVENTURES OF CAPTAIN UNDERPANTS to HOW DO
> DINOSAURS SAY GOOD NIGHT?, many, many books later, our
> winged heart continues to thrive.

48.     As of 2019, Verburg was continuing to perform at the highest levels.

49.     Verburg's Fall 2019 list included two-time Caldecott Medalists Leo & Diane Dillon's LOVE AND THE ROCKING CHAIR (which was already cited in School Library Journal's "Spotlight" as a contender for 2020's Caldecott Medal).  Verburg was also publishing WILDFIRE, a new novel by Newbery Honor Author Rodman Philbrick.  In addition, Verburg's Fall 2019 list also included board book versions of two very popular picture books:  HOW DO DINOSAURS SAY MERRY CHRISTMAS? and HOW DO DINOSAURS SAY HAPPY CHANUKAH?

50.     Indeed, after Ms. Verburg turned around eight drafts of WILDFIRE, Scholastic's Book Fairs Division ordered 200,000 copies of the book in anticipation of heavy demand.  The Division has also created posters, a promotional video, and shelf headers for the entire school year.  They distributed 14,000 paperbacks to their top accounts and made plans to send the author on tour.

51.     Scholastic's Book Clubs Division concurred with Book Fairs' assessment of WILDFIRE and seeded its market by sending 6,500 bound galleys of WILDFIRE to top teachers.

**B.      Defendants Systematically Discriminate Against Verburg**

52.     Ms. Verburg is 65 years old.

53.     As Verburg grew older, Verburg's supervisors and other Scholastic executives began to regularly make disparaging comments that revolved around her age and expressed a clear desire that the company employ younger employees.

54.     Defendant Eleanor "Ellie" Berger, Scholastic's Trade Books Group President and Verburg's direct supervisor made numerous disparaging comments about Verburg's age.  For example, on July 31, 2017, Berger and Verburg were discussing whether to acquire WILDFIRE, the book from Rodman Philbrick, who is also in his late sixties.  Ms. Berger dismissed Verburg's ideas, telling her that she was just acting "like an old person," and that both Verburg and Philbrick were "outdated."

55.     Nor was Berger's animus confined to her comments.  Berger also gave similarly situated younger editors larger travel and entertainment budgets than she gave to Verburg. Because Berger believes that younger editors are more valuable than older editors, she reasoned that it made the most sense to allocate more resources towards younger editors.

56.     When older editors succeeded in spite of this treatment, Berger would nevertheless work to undermine them and reassign their successful projects to younger employees.

57.     For example, in 2017, Scholastic decided to redesign Verburg's popular easy-reader series called POPPLETON and to add two additional books that Verburg had already acquired.

58.     Without consulting Verburg, Scholastic changed imprints and assigned a much younger employee to edit the new books.

59.     This unexplained change was so disturbing that the series illustrator, Mark Teague, questioned Verburg about it.  She was given no explanation by Scholastic to offer him.

60.     Similarly, in 2018, Verburg proposed that Scholastic publish a book about a dog that is rescued and then himself becomes a rescue dog.  The dog would then locate people trapped by earthquakes and other disasters, leading to a series.

61.     Berger initially rejected the proposal.  But months later a younger editor was given permission to acquire a nearly identical book/series with the series title RESCUE DOGS.

62.     Scholastic's senior managers have been aware of Berger's animus towards older employees for a long time.

63.     For years, Berger has been close with Lizette Serrano, Executive Director, Educational Marketing and Event Strategy.

64.     On March 8, 2017, Serrano and Verburg discussed staff layoffs.   In that conversation, Serrano told Verburg that "Ellie [Berger] wants the more younger people here."

65.     The company's support for Berger's discriminatory treatment of older employees caused other employees to engage in this same misconduct.

66.     For example, on February 16, 2017, Verburg had a conversation with Ken Geist, another book editor, about Scholastic's relationship with Jane Yolen and Mark Teague, who are a highly regarded author and illustrator, respectively.

67.     In that conversation, Geist told Verburg point blank, "At your age, you're lucky to have a job."

68.      Similarly, on October 10, 2016, while discussing promotion strategies for the twentieth anniversary of Verburg's popular "HOW DO DINOSAURS..." series, Geist told Verburg that she could pose as the grandmother of a dinosaur.

69.     Numerous other Scholastic executives made similar disparaging comments.  For example, on September 25, 2014, while discussing possible staff changes, David Saylor, a senior executive in the Graphix Imprint, told Verburg that Scholastic needed to "get somebody younger and more dynamic."

**C.      Defendants Fire Verburg**

70.      On April 10, 2019, Verburg was summoned to a meeting with Defendant Richard

Robinson, Scholastic's CEO, in his private conference room.

71.      At the meeting Robinson told Verburg that she was fired.

72.      Prior to the April 10, 2019 meeting with Robinson, Verburg had never had a

negative performance review.

73.      Prior to the April 10, 2019 meeting Verburg had never been told that her job

performance was inadequate or that her job was in jeopardy.

74.      Distraught at suddenly losing a job where she had performed outstanding work for

over a quarter of a century, Verburg asked why she was being terminated and whether anyone

else was being let go.

75.      They say that a gaffe is when a politician accidentally tells the truth.  Sometimes

this happens to business executives as well.

76.      In response to Verburg's question, Robinson admitted that the company decided to

terminate a number of older employees with long service to the company, including herself.

77.      Robinson admitted that age and length experience were factors in Scholastic's

decision to fire Verburg and others.

78.      In fact, Robinson had nothing but compliments about Verburg's contributions to

the company.

79.      At the time she was terminated, Verburg had numerous accrued vacation days.

80.      But Scholastic refused to timely pay Verburg for her accrued vacation days unless

she agreed to release all claims against the company.

81.     Ultimately Scholastic paid Verburg for some – but not all – of the vacation days to which she was entitled.

82.     Scholastic has a policy of paying terminated employees two weeks of severance pay for each year of service.

83.     But Scholastic also refused to pay Verburg any severance unless she agreed to release all claims against the company.

**D.     Defendants Systematically Underpay Scholastic's Female Employees**

84.     After she was fired, Verburg then discovered that she had been paid far, far less than her male colleagues.

85.     For example, in 2001, when Geist was first hired, he was paid over $250,000 and Verburg was paid less than $190,000.

86.     In 2009, Verburg's base salary was still less than $190,000.

87.     In contrast, Ken Geist, who had exactly the same job title as Verburg's, had a base compensation in 2009 of approximately $350,000.

88.     This disparity compounded over time.  At the time that Verburg was fired, she was earning a base salary of $193,950.  Geist was earning in excess of $385,000 per year.

89.      Geist and Verburg were both the heads of their own imprints at Scholastic and had the exact same title.  They both reported to Defendant Berger in the New York office.

90.     There was no *bona fide* reason for the pay disparity between Geist and Verburg.

91.     Arthur Levine, David Saylor, Barry Cunningham, and David Levithan are other Scholastic employees who had jobs that were substantially similar to Ms. Verburg and/or shared a title with Ms. Verburg.

92.     Each of these male employees earned between $100,000 to $300,000 more per year than Verburg made during the same time periods.

E.     **Exhaustion of Administrative Remedies**

93.      Scholastic has violated Plaintiff's and current and former employees' rights under the California Labor Code, including the California Equal Pay Act, Section 1197.5.

94.     Upon information and belief, Scholastic employs more than five people within the state of California and is subject to the provisions of the Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12900 *et seq*.

95.     Prior to filing this First Amended Complaint, Verburg fulfilled any legal requirement or exhausted any administrative remedy by filing the substance of the claims alleged here with the California Department of Fair Employment and Housing ("DFEH") on November 8, 2019, and received a Right to Sue Letter from DFEH on November 19, 2018.

96.     Pursuant to California Labor Code §§ 2698 et seq., the Labor Code Private Attorneys General Act of 2004 ("PAGA"), Verburg is entitled to recover civil penalties on behalf of herself and other current or former Scholastic employees for Scholastic's violations of provisions of the California Labor Code that provide for civil penalties to be assessed and collected by the California Labor and Workforce Development Agency ("LWDA").

97.     Verburg is an "aggrieved employee" under California Labor Code § 2699(c), because she was employed by Scholastic and suffered one or more of the violations committed by Scholastic.

98.     Verburg has met all of the jurisdictional requirements for proceeding with her claims under PAGA.

99.     Verburg gave timely notice to Scholastic and the LWDA of her intention to proceed with the claims alleged herein on or about November 8, 2019.

100.    The LWDA declined to proceed on Verburg's behalf by the deadline to accept the case for investigation of January 7, 2020.  Therefore, pursuant to Labor Code § 2699.3, Verburg has the right to proceed with this action and to seek civil penalties under PAGA.

101.    Verburg has complied with all requirements for the filing of this Second Amended Complaint and has exhausted her administrative remedies prior to filing this Second Amended Complaint.

## CAUSES OF ACTION

### COUNT ONE
### VIOLATION OF THE EQUAL PAY ACT OF 1963
### GENDER DISCRIMINATION
### 29 U.S.C. §§ 206 et seq.

102.    Plaintiff re-alleges and incorporates by reference each and every allegation in each and every preceding paragraph as if fully set forth herein.

103.    Defendants are employers for purposes of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 206, *et seq.*, as amended by the Equal Pay Act of 1963 ("EPA").

104.    Defendants have discriminated against Plaintiff in violation of the EPA by paying Plaintiff less than similarly-situated male colleagues performing equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

105.    Defendants have subjected Plaintiff to discriminatory pay policies, including: a discriminatory system of determining salaries and other compensation incentives, which resulted in Plaintiff performing the same tasks receiving different compensation; and other forms of discrimination affecting pay.

106.    The differential in pay between male and female workers was not due to seniority, merit, quantity, or quality of production, but was due to gender.

107.    Defendants have caused, attempted to cause, contributed to, or caused the continuation of, the wage rate discrimination based on sex in violation of the EPA.  Moreover, the foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a).  Because Defendants have willfully violated the EPA, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

108.    As a result of Defendants' conduct alleged in this Complaint, Plaintiff has suffered and will continue to suffer harm, including but not limited to: lost earnings, lost benefits, and other financial loss, as well as non-economic damages.

109.    By reason of Defendants' discrimination, Plaintiff is entitled to all legal and equitable remedies available for violations of the EPA including liquidated damages for all willful violations, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).  Attorneys' fees should be awarded under 29 U.S.C. § 216(b).

## COUNT TWO
## VIOLATION OF THE CALIFORNIA EQUAL PAY ACT
### Cal. Lab. Code § 1197.5, *et seq*.

110.    Plaintiff re-alleges and incorporates by reference each and every allegation in each and every preceding paragraph as if fully set forth herein.

111.    Scholastic has discriminated against the Plaintiff in violation of the California Equal Pay Act, Cal. Lab. Code § 1197.5, *et seq*.  Scholastic has paid Plaintiff less than similarly-situated male employees in the same establishment performing equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

112.    Scholastic has subjected Plaintiff to common discriminatory pay policies, including: a discriminatory system of determining salaries and other compensation incentives.

113.    The differential in pay between male and female employees was not due to seniority, merit, the quantity or quality of production, or a *bona fide* factor other than sex, such as education, training, or experience, but was due to gender. In the alternative, to the extent that Defendant relied upon one or more of these factors, said factor(s) were not reasonably applied and did/do not account for the entire wage differential.

114.    Scholastic caused, attempted to cause, contributed to, or caused the continuation of, the wage rate discrimination based on sex.  Moreover, the foregoing conduct constitutes a willful violation of the California Equal Pay Act, Cal. Lab. Code § 1197.5, *et seq.*  Therefore, a three-year statute of limitations applies to such violations, pursuant to California Equal Pay Act, Cal. Lab. Code § 1197.5(h) *et seq.*, and California Equal Pay Act, as amended by the California Fair Pay Act, Cal. Lab. Code § 1197.5(h).

115.    Scholastic knew or should have known of the illegal discrimination against Plaintiff on the basis of sex, and failed to take immediate and appropriate corrective action.

116.    Scholastic failed to implement policies, procedures, or training to prevent or discover discrimination within the company.

117.    As a result of Scholastic's conduct alleged in this Complaint and/or Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial losses, as well as non-economic damages.

118.    Plaintiff is therefore entitled to all legal and equitable remedies, including doubled compensatory awards for all willful violations.

119.    Attorneys' fees should be awarded under California Labor Code § 1197.5(g).

## COUNT THREE
## UNFAIR COMPETITION
### California Business and Professions Code § 17200 *et seq.*

120.    Plaintiff re-alleges and incorporates by reference each and every allegation in each and every preceding paragraph as if fully set forth herein.

121.    Scholastic is a "person" as defined under California Business & Professions Code § 17021.

122.    Scholastic's willful failure to pay female employees equally and to otherwise offer female workers equal employment opportunities as alleged above, constitutes unlawful, unfair, and/or fraudulent activity prohibited by California Business and Professions Code §17200.

123.    Scholastic refused to pay Plaintiff compensation that she had earned without Plaintiff releasing all of her claims against Defendant.

124.    As a result of their unlawful, unfair, and/or fraudulent acts, Scholastic reaped and continues to reap unfair benefits and illegal profits at the expense of Plaintiff.  Scholastic should be enjoined from this activity.

125.    Accordingly, Plaintiff is entitled to restitution with interest and other equitable relief, pursuant to Cal. Bus. & Prof. Code § 17203.

## COUNT FOUR
## GENDER DISCRIMINATION
### New York Executive Law § 296

126.    Plaintiff re-alleges and incorporates by reference each and every allegation in each and every preceding paragraph as if fully set forth herein.

127.    Defendants are liable under Section 296 of the New York Executive Law as employers and because they aided and abetted the gender discrimination that Plaintiff suffered at Scholastic.

128.     Defendants discriminated against Verburg in violation of Section 296 of the New York Executive Law based on her gender.

129.     Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Verburg.

130.     Defendants' discriminatory conduct was done with malice or with reckless indifference to the protected rights of Verburg.

131.     As a result of Defendants' conduct alleged in this complaint, Verburg has suffered and continues to suffer harm, including but not limited to lost earnings, lost employment opportunities, other financial loss, and non-economic damages for emotional pain, suffering, and mental anguish.

132.     By reason of the foregoing, Verburg is entitled to all remedies available under the New York Executive Law.

## COUNT FIVE
## GENDER DISCRIMINATION
### New York City Administrative Code § 8-107

133.     Plaintiff re-alleges and incorporates by reference each and every allegation in each and every preceding paragraph as if fully set forth herein.

134.     Defendants are liable under Section 8-107 of the New York City Administrative Code as employers and because they aided and abetted the gender discrimination that Plaintiff suffered at Scholastic.

135.     Defendants discriminated against Verburg in violation of Section 8-107 of the New York City Administrative Code based on her gender.

136.     Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Verburg.

137.    Defendants' discriminatory conduct was done with malice or with reckless indifference to the protected rights of Verburg.

138.    As a result of Defendants' conduct alleged in this complaint, Verburg has suffered and continues to suffer harm, including but not limited to lost earnings, lost employment opportunities, other financial loss, and non-economic damages for emotional pain, suffering, and mental anguish.

139.    By reason of the foregoing, Verburg is entitled to all remedies available under the New York City Administrative Code.

## COUNT SIX
## AGE DISCRIMINATION
## New York Executive Law § 296

140.    Plaintiff re-alleges and incorporates by reference each and every allegation in each and every preceding paragraph as if fully set forth herein.

141.    Defendants discriminated against Verburg in violation of Section 296 of the New York Executive Law based on her age.

142.    Defendants are liable under Section 296 of the New York Executive Law as employers and because they aided and abetted the gender discrimination that Plaintiff suffered at Scholastic.

143.    Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Verburg.

144.    Defendants' discriminatory conduct was done with malice or with reckless indifference to the protected rights of Verburg.

145.    As a result of Defendants' conduct alleged in this complaint, Verburg has suffered and continues to suffer harm, including but not limited to lost earnings, lost employment

opportunities, other financial loss, and non-economic damages for emotional pain, suffering, and mental anguish.

146.    By reason of the foregoing, Verburg is entitled to all remedies available under the New York Executive Law.

**COUNT SEVEN**
**AGE DISCRIMINATION**
**New York City Administrative Code § 8-107**

147.    Plaintiff re-alleges and incorporates by reference each and every allegation in each and every preceding paragraph as if fully set forth herein.

148.    Defendants discriminated against Verburg in violation of Section 8-107 of the New York City Administrative Code based on her age.

149.    Defendants are liable under Section 8-107 of the New York City Administrative Code as employers and because they aided and abetted the gender discrimination that Plaintiff suffered at Scholastic.

150.    Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Verburg.

151.    Defendants' discriminatory conduct was done with malice or with reckless indifference to the protected rights of Verburg.

152.    As a result of Defendants' conduct alleged in this complaint, Verburg has suffered and continues to suffer harm, including but not limited to lost earnings, lost employment opportunities, other financial loss, and non-economic damages for emotional pain, suffering, and mental anguish.

153.    By reason of the foregoing, Verburg is entitled to all remedies available under the New York City Administrative Code.

**COUNT EIGHT**
**AGE DISCRIMINATION**
**California Government Code § 12940** *et seq.*

154.     Plaintiff re-alleges and incorporates by reference each and every allegation in each and every preceding paragraph as if fully set forth herein.

155.     At all relevant times, California Government Code § 12940 *et seq*. of the Fair Employment and Housing Act ("FEHA") were in full force and effect and were binding on Scholastic.

156.     These sections bar Scholastic, as an employer, from discriminating, harassing or retaliating in employment decisions on the basis of age.

157.     Scholastic intentionally, knowingly, and recklessly engaged in a pattern and practice of age discrimination and harassment against Verburg on the basis of her age, by subjecting Verburg to harassment, disparate treatment, and hostility because of her age.

158.     The misconduct continued until Plaintiff was wrongfully terminated on the basis of her age on June 1, 2019.

159.     Plaintiff was 64 years old when she was terminated.

160.     At all relevant times, Plaintiff was otherwise qualified to perform the duties that Scholastic assigned to her.

161.     Scholastic failed to exercise reasonable case to prevent and promptly correct the harassing and discriminatory behavior of its employees and managers towards Plaintiff.

162.     As a direct and proximate result of Scholastic's conduct, Verburg has suffered and continues to suffer substantial losses in earnings and job benefits, in an amount to be proven at trial.  Verburg is further entitled to recover attorneys' fees, costs, and pre-judgment interest.

**COUNT NINE**
**UNPAID VACATION DAYS**
**California Labor Code §§ 201, 203, 206, 216 & 227.3**

163.    Plaintiff re-alleges and incorporates by reference each and every allegation in each and every preceding paragraph as if fully set forth herein.

164.    At all relevant times, section 201(a) of the California Labor Code has stated that "if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

165.    At all relevant times, section 202(a) of the California Labor Code has stated that "if an employee … quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting."

166.    At all relevant times, section 203(a) of the Labor Code has stated, "if an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201 [or] 202, … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

167.    At all relevant times, section 206(a) of the California Labor Code has stated, "In case of a dispute over wages, the employer shall pay, without condition and within the time set by this article, all wages, or parts thereof, conceded by him to be due, leaving to the employee all remedies he might otherwise be entitled to as to any balance claimed."

168.    At all relevant times, section 216 of the California Labor Code has stated, "In addition to any other penalty imposed by this article, any person, or an agent, manager, superintendent, or officer thereof is guilty of a misdemeanor, who:  (a) Having the ability to pay,

willfully refuses to pay wages due and payable after demand has been made; (b) Falsely denies

the amount or validity thereof, or that the same is due, with intent to secure for himself, his

employer or other person, any discount upon such indebtedness, or with intent to annoy, harass,

oppress, hinder, delay, or defraud, the person to whom such indebtedness is due."

169.    At all relevant times, section 227.3 of the California Labor Code has stated,

"[W]henever a contract of employment or employer policy provides for paid vacations, and an

employee is terminated without having taken off his vested vacation time, all vested vacation

shall be paid to him as wages at his final rate in accordance with such contract of employment or

employer policy respecting eligibility or time served …"

170.    Scholastic terminated Ms. Verburg on June 1, 2019, but improperly and willfully

refused to pay her for her accrued vacation days unless she agreed to release all claims against

the company for age and gender discrimination.

171.    Ultimately, Scholastic paid Verburg for some – but not all – of the vacation days

to which she was entitled.

172.    Pursuant to Labor Code §§ 203 and 225.5, Plaintiff is entitled to recover from

Defendant 30 additional days of her wages as a penalty, an additional $200, plus 25 percent of

the amount unlawfully withheld.

<u>**COUNT TEN**</u>
**PAGA CLAIM FOR UNPAID VACATION DAYS**
**California Labor Code §§ 201, 202, 203, 216 & 227.3**

173.    Plaintiff re-alleges and incorporates by reference each and every allegation in

each and every preceding paragraph as if fully set forth herein.

174.    Pursuant to Labor Code § 2699, Plaintiff seeks to recover civil penalties on behalf

of herself and all other aggrieved persons, for Defendant's failure to pay vacation days due upon

cessation of employment as required by California Labor Code §§ 201, 202, 203, 216 & 227.3,

in an amount according to proof at trial of not less than the continued wages of the aggrieved employee from the due date thereof at the same rate until paid or until an action therefor is commenced, for a period not to exceed 30 days, plus an additional $200, plus 25 percent of the amount unlawfully withheld.

175.     Plaintiff is also entitled to attorney's fees, expenses, and costs of suit pursuant to California Labor Code §§ 218.5 and 2699(g)(1) for pursuing this action.

**COUNT ELEVEN**
**UNPAID SEVERANCE PAY**
**California Labor Code §§ 201, 203 & 216**

176.     Plaintiff re-alleges and incorporates by reference each and every allegation in each and every preceding paragraph as if fully set forth herein.

177.     At all relevant times, section 201(a) of the California Labor Code has stated that "if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

178.     At all relevant times, section 202(a) of the California Labor Code has stated that "if an employee … quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting."

179.     At all relevant times, section 203(a) of the Labor Code has stated, "if an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201 [or] 202, … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

180.   At all relevant times, section 216 of the California Labor Code has stated, "In addition to any other penalty imposed by this article, any person, or an agent, manager, superintendent, or officer thereof is guilty of a misdemeanor, who:  (a) Having the ability to pay, willfully refuses to pay wages due and payable after demand has been made; (b) Falsely denies the amount or validity thereof, or that the same is due, with intent to secure for himself, his employer or other person, any discount upon such indebtedness, or with intent to annoy, harass, oppress, hinder, delay, or defraud, the person to whom such indebtedness is due."

181.   Scholastic has a policy of paying terminated employees two weeks of severance pay for each year of their service.

182.   Scholastic terminated Ms. Verburg on June 1, 2019, but improperly and willfully refused to pay her for severance pay to which she was entitled unless she agreed to release all claims against the company for age and gender discrimination.

183.   Pursuant to Labor Code §§ 203 and 225.5, Plaintiff is entitled to recover from Defendant 30 additional days of her wages as a penalty, an additional $200, plus 25 percent of the amount unlawfully withheld.

**<u>COUNT TWELVE</u>**
**PAGA CLAIM FOR UNPAID SEVERANCE PAY**
**California Labor Code §§ 201, 202, 203 & 216**

184.   Plaintiff re-alleges and incorporates by reference each and every allegation in each and every preceding paragraph as if fully set forth herein.

185.   Pursuant to Labor Code § 2699, Plaintiff seeks to recover civil penalties on behalf of herself and all other aggrieved persons, for Defendant's failure to pay vacation days due upon cessation of employment as required by California Labor Code §§ 201, 202, 203 and 216 in an amount according to proof at trial of not less than the continued wages of the aggrieved employee from the due date thereof at the same rate until paid or until an action therefor is

commenced, for a period not to exceed 30 days, plus an additional $200, plus 25 percent of the amount unlawfully withheld.

186.     Plaintiff is also entitled to attorney's fees, expenses, and costs of suit pursuant to California Labor Code §§ 218.5 and 2699(g)(1) for pursuing this action.

## PRAYER FOR RELIEF

Wherefore, Bonnie Verburg prays for judgment and relief as follows:

A.     Issue a permanent injunction against Defendants and Scholastic's officers, trustees, owners, employees, agents, attorneys, successors, assigns, representatives, and any and all persons acting in concert with them from engaging in any conduct violating the rights of the Plaintiff, as secured by the Equal Pay Act and/or California law, and order such injunctive relief as will prevent Scholastic from continuing its discriminatory practices and from engaging in any further unlawful practices, policies, customs, usages, and gender discrimination as set forth herein;

B.     Award back pay, front pay, lost benefits, preferential rights to jobs, and other damages for lost compensation and job benefits suffered by the Plaintiff, in an amount not less than $5,000,000;

C.     Award nominal, liquidated, and compensatory damages to Plaintiff, in an amount not less than $5,000,000;

D.     Award punitive damages to Plaintiff;

E.     Award civil and statutory penalties available under applicable laws, including waiting time penalties;

F.     Order Scholastic to make whole the Plaintiff by providing her with any other monetary and affirmative relief;

G.     Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to the Plaintiff;

H.   Award Plaintiff all pre-judgment interest and post-judgment interest available under law;

I.   Award Plaintiff any other appropriate equitable relief, including reinstatement;

J.   Order that this Court retain jurisdiction of this action until such time as the Court is satisfied that Scholastic has remedied the practices complained of herein and is determined to be in full compliance with the law; and

K.   Award additional and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable of right by jury.

**DATED:**   New York, New York
            June 8, 2020




Rishi Bhandari

MANDEL BHANDARI LLP
Rishi Bhandari
Donald Conklin
80 Pine Street, 33rd Floor
New York, NY 10005
T:  (212) 269-5600
F:  (646) 964-6667
rb@mandelbhandari.com
dc@mandelbhandari.com
*Attorneys for Plaintiff Bonnie Verburg*