**MB MANDEL BHANDARI** LLP

80 Pine Street │ 33rd Floor │ New York, NY │ 10005 │ T. (212) 269-5600 │ F. (646) 964-6667 │ www.mandelbhandari.com

March 15, 2021

**BY ECF**

Hon. Gabriel W. Gorenstein
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    **Verburg v. Scholastic Inc.,**
                 **Index No. 1:19-cv-10837 (JGK)(GWG)**

Dear Judge Gorenstein:

      We represent plaintiff Bonnie Verburg in this action, and write to respectfully request an order directing that service of a subpoena for the remote video deposition of Scholastic author Dav Pilkey may be properly served on counsel for Defendants in this action under Fed. R. Civ. P. 45(b)(3) (incorporating 28 U.S.C. § 1783(b) pursuant to Fed. R. Civ. P. 4(f)(3)).

      Plaintiff first raised the issue of Mr. Pilkey's deposition in a letter to the Court dated January 12, 2021. (Dkt. # 52.) In a January 15, 2021 order, the Court stated, "If Mr. Pilkey is unwilling to agree that Mr. Warshaw (or another attorney) can accept service of a subpoena, the plaintiff has leave to seek an order directing that service of a subpoena on Mr. Warshaw is proper service on Mr. Pilkey … If … it is necessary to make an application for alternative service under Fed. R. Civ. P. 4(f)(3), the Court's pre-motion conference requirement is waived and the application may be made by letter." (Dkt. # 54 at 1.)[1]

      Plaintiff again raised this issue in a joint letter requesting an extension of the discovery schedule here dated February 16, 2021. (Dkt. # 57.) In an order that same day, the Court stated, "As to the request relating to service on Dav Pilkey, the request is denied without prejudice to a new application that sets forth all relevant facts and discusses why case law under Fed. R. Civ. P. 4(f)(3) permits the order sought by plaintiff. If defendants oppose the application, their opposition shall be filed within two business days of plaintiff's application." (Dkt. #58.)

---

[1] The Court stated that its analysis assumed that Mr. Pilkey is a "United States national or resident" under Fed. R. Civ. P. 45(b)(3), which he is. (Dkt. # 54 at 1 n.1.) *See, e.g.*, BIOGRAPHICAL NOTE, DAV PILKEY COLLECTION AT KENT STATE UNIVERSITY ("Born in Cleveland, Ohio, Dav Pilkey attended Kent State University, where an English professor encouraged him to write children's books."), *available at* https://www.library.kent.edu/dav-pilkey-papers.

## **BACKGROUND**

Plaintiff Bonnie Verburg, who is 66 years old, was a Vice President and Editorial Director at Scholastic who worked for the company from 1992 until she was terminated on June 1, 2019. During her tenure, Verburg was subjected to discrimination, slurs and harassment concerning her age. On April 10, 2019, Verburg was summoned to a meeting with defendant Scholastic CEO Richard Robinson, at which he told her she was fired. Prior to the meeting, Verburg had never had a negative performance review or been told that her job performance was inadequate or her job was in jeopardy, by her supervisor defendant Eleanor Berger or anyone else. At this meeting, Robinson admitted that Scholastic decided to terminate a number of older employees based on age and length of experience. After terminating Verburg, Scholastic refused to pay her for accrued vacation days or the severance to which she was entitled unless she agreed to release all claims against the company.

After she was fired, Verburg discovered that she had been paid far less than similarly situated male colleagues. These male employees earned between $100,000 to $300,000 more per year than Verburg made during the same time periods. There was no bona fide reason for the pay disparity between Verburg and these similarly situated male colleagues.

Defendants contend that the difference in pay between Verburg and comparable coworkers was a result of lawful factors such as performance metrics and Verburg's contribution to Scholastic. That issue is one of the subjects of ongoing discovery in this case.

Discovery from Mr. Pilkey is essential to the claims and defenses in this action. Mr. Pilkey is an American cartoonist, author and illustrator of children's literature. He is best known as the author and illustrator of the children's book series Captain Underpants, which has sold more than 80 million books worldwide. The "backlist" of Mr. Pilkey's not newly published books continues to have strong sales year after year.

With Harry Potter author J.K. Rowling, Mr. Pilkey is one of the highest profile authors published by Scholastic. Verburg was Mr. Pilkey's first editor at Scholastic, and her imprint Blue Sky Press published the first eight books in the Captain Underpants series. Mr. Pilkey is expected to testify about Verburg's contribution to Scholastic, and sales of Scholastic books on which she worked.

On September 28, plaintiff served a subpoena for Mr. Pilkey's deposition on counsel for defendants. October 19, counsel for defendants wrote that Mr. Pilkey now resides in Japan, but

> We are amenable to accepting service of the subpoena on his behalf to facilitate the deposition, but he is also currently on a book deadline through mid-November. Scholastic would strongly prefer that he continue focusing on completing his book. Put another way, provided you are amenable to holding off scheduling his deposition until he gets past his deadline and give us his available dates, we can

    accept service on his behalf so you can avoid going through international service of the subpoena.

  Plaintiff accepted that offer and postponed further discussion about Mr. Pilkey's deposition until mid-November. Counsel for defendants wrote on December 15 that, "Upon our further efforts to coordinate with Mr. Pilkey, he has elected to retain his own counsel in this matter .... It is our understanding that Mr. Pilkey is out of the country for the foreseeable future, but you can confirm that with his counsel."

## ARGUMENT

  Under the Walsh Act, 28 U.S.C. § 1783, and Federal Rule of Civil Procedure 45(b)(3),

    [a] court of the United States may order the issuance of a subpoena requiring the appearance as a witness before it . . . of a national or resident of the United States who is in a foreign country . . . if the court finds that particular testimony . . . is necessary in the interest of justice, and . . . that it is not possible to obtain his testimony in admissible form without his personal appearance . . . .

28 U.S.C. § 1783(a); *Estate of Ungar v. Palestinian Auth.*, 412 F. Supp. 2d 328, 332 (S.D.N.Y. 2006) (explaining the Walsh Act). In addition, § 1783(b) requires that service of a Walsh Act subpoena must be made in compliance with the "Federal Rules of Civil Procedure and that the serving party pay the necessary travel costs of the witness, which are to be determined by the court." Id.

  Thus, two elements must be satisfied before a Court can issue a subpoena to a U.S. citizen living "outside the territorial jurisdiction of the United States": (1) the particular testimony is necessary in the "interest of justice" and (2) it is not possible to obtain the witness's testimony in admissible form without his or her personal appearance.

  As far as the first prong, testimony is "'necessary in the interest of justice' if it is relevant under the liberal standards set forth in Federal Rule of Civil Procedure 26(b) …" *S.E.C. v. Sabhlok*, No. 08 Civ. 4238, 2009 WL 3561523, at *3 (N.D. Cal. Oct. 30, 2009). Mr. Pilkey's testimony is required in the "interest of justice" because it is relevant, necessary, and bears directly on key issues in the case.

  As far as the second prong, courts analyze whether it is practical to obtain the information sought from the witness. Impracticality occurs where other means are unlikely to produce the relevant evidence in time to meet impending discovery deadlines. *S.E.C. v. Sandifur*, No. 05 Civ. 1631, 2006 WL 3692611, at *4 (W.D. Wash. Dec. 11, 2006) (noting that it was impractical for plaintiff to effect service under the Hague Convention in the "context of the looming discovery deadline and overall trial schedule."). It would not be practical for plaintiff here to effect service under the Hague Convention on Mr. Pilkey, both because service would not be

complete within the discovery deadlines of this case and because Mr. Pilkey's current residence is not known.

A subpoena issued under the Walsh Act must comply with Fed. R. Civ. P. 4(f). 28 U.S.C. § 1783(b). Federal Rule of Civil Procedure 4(f)(3) authorizes a court to order alternative service. Fed R. Civ. P. 4(f)(3) (service may be effectuated "by other means not prohibited by international agreement, as the court orders.").

Alternative service is appropriate if "it (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *Fisher v. Petr Konchalovsky Found.*, 15-cv-9831(AJN), 2016 WL 1047394, at *2 (S.D.N.Y. Mar. 10, 2016). Alternative service is "neither a last resort nor extraordinary relief," and a plaintiff "is not required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3)." *Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374, 377 (S.D.N.Y. 2018); *see also* 4B Charles Alan Wright and Arthur R. Miller, FED. PRAC. & PRO., Civ., at § 1134 (4th ed. 2018) ("The use of a court-directed means for service of process under rule 4(f)(3) is not a disfavored process and should not be considered extraordinary relief. The only proscription on the district court's discretion under Rule 4(3)(f) is that the method not be prohibited by international agreement.").

Importantly, "nothing in Rule 4(f) itself or controlling case law suggests that a court must always require a litigant to first exhaust the potential for service under the Hague Convention before granting an order permitting alternative service under Rule 4(f)(3).'" *Elsevier*, 287 F. Supp. 3d at 378 (quoting *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) (allowing alternative service on counsel for foreign defendant because, among other things, using the Hague Convention would cause a six to eight month delay)). The decision whether to permit alternative service is "committed to the sound discretion of the district court." *Id.* (citations omitted).

Serving Mr. Pilkey by serving Scholastic's lawyers here via email comports with all relevant international agreements and is proper for three reasons. *First*, Scholastic's lawyers initially represented that they were authorized to accept service on Mr. Pilkey's behalf and considered themselves to be his agents for that purpose. While they later reneged on the agreement to accept service for Mr. Pilkey in return for pushing back the date on which he would be deposed, allowing him to get the benefit of that bargain without fulfilling his side of that agreement would be improper and incentivize gamesmanship.

*Second*, both Japan and the United States are signatories to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. While Japan has objected to service by email, "courts have routinely recognized that such objections do not extend to service by email." *Elsevier*, 287 F. Supp. 3d at 379 n.2; *see also FTC v. Pecon Software Ltd.*, Nos. 12 Civ. 7186(PAE), 12 Civ. 7188(PAE), 12 Civ. 7191(PAE), 12 Civ. 7192(PAE), 12 Civ. 7195(PAE), 2013 WL 4016272, at *5 (S.D.N.Y. Aug. 7, 2013) ("Numerous courts have held that service by email does not violate any international agreement where the objections of the recipient nation

are limited to those means enumerated in Article 10."). Moreover, because Mr. Pilkey's current address in Japan is unknown, therefore the Hague Convention does not apply. *Elsevier*, 287 F. Supp. 3d at 378-79.

Finally, serving Mr. Pilkey with the subpoena by email Scholastic's counsel is "reasonably calculated, under all circumstances, to apprise [him] of [the subpoena] and afford him an opportunity to present … objections." *Elsevier*, 287 F. Supp. 3d at 379. He has previously been in contact with Scholastic's counsel about this action and Plaintiff's request for his deposition. He is also in regular contact with Scholastic in its capacity as his longtime publisher. As long as the plaintiff "demonstrates that the email is likely to reach the defendant," then "[s]ervice by email alone comports with due process." *Fisher*, 2016 WL 1047394, at *2.

Given that email via counsel for Scholastic here is certain to reach Mr. Pilkey, would avoid needless delay, and would fulfill with the prior agreement of the parties, the Court should grant plaintiff's request to serve Mr. Pilkey by email on Scholastic's counsel under Fed. R. Civ. P. 45(b)(3), 28 U.S.C. § 1783, and Fed. R. Civ. P. 4(f)(3).

Respectfully submitted,

MANDEL BHANDARI LLP

By:

_____
Rishi Bhandari
rb@mandelbhandari.com
80 Pine Street, 33rd Floor
New York, NY 10005
Telephone: (212) 381-0570
**ATTORNEYS FOR PLAINTIFF**