```
                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK


In re:                              :
                                         Docket #1:19-cv-10837-
BONNIE VERBURG,                     :    JGK-GWG

                  Plaintiff,        :

   - against -                      :

SCHOLASTIC INC.,                    :  NEW YORK, NEW YORK
                                       March 31, 2021
                  Defendant.        :
                                       TELEPHONE CONFERENCE
------------------------------------ :


                    PROCEEDINGS BEFORE
           THE HONORABLE JUDGE GABRIEL W. GORENSTEIN,
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          MANDEL BHANDARI LLP
                        BY:  DONALD DAVID CONKLIN, III, ESQ.
                             RISHI BHANDARI, ESQ.
                        80 Pine Street, 33rd floor
                        New York, New York 10005
                        212-269-5600


For Defendant:          OGLETREE DEAKINS
                        BY:  AARON WARSHAW, ESQ.
                        599 Lexington Avenue, 17th Floor
                        New York, New York 10022
                        212-492-2502




Transcription Service:  Carole Ludwig, Transcription Services
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:   Transcription420@aol.com


Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service
```

**<u>INDEX</u>**

**<u>E X A M I N A T I O N S</u>**

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | Re-<br><u>Direct</u> | Re-<br><u>Cross</u> |
|---|---|---|---|---|
| None | | | | |

**<u>E X H I B I T S</u>**

| Exhibit<br><u>Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | Voir<br><u>Dire</u> |
|---|---|---|---|---|
| None | | | | |

```
 1                        PROCEEDINGS                  3

 2            THE CLERK:  This is the matter of Bonnie Verburg

 3   versus Scholastic, Inc., docket number 19-civ-10837.

 4   Counsel, state your name, please, starting with plaintiffs.

 5            MR. DONALD CONKLIN:  Sure. This is Donald Conklin

 6   from Mandel Bhandari on behalf of plaintiff, Bonnie Verburg.

 7            MR. RISHI BHANDARI:   This is Rishi Bhandari, also

 8   of Mandel Bhandari, for Bonnie Verburg.

 9            MR. AARON WARSHAW:  Good morning, this is Aaron

10   Warshaw from Ogletree Deakins on behalf of the defendant.

11            HONORABLE GABRIEL W. GORENSTEIN (THE COURT):

12   Okay, so when I set up this conference, I did it based upon

13   the letter I got, docket number 61. Had I read the

14   defendant's letter before last night, which I hadn't, I

15   would have asked that Mr. Pilkey's attorney be told about

16   this conference, at a minimum, just to, you know, give him

17   the opportunity to send a letter. So I'm sort of inclined

18   just to adjourn. I mean, I'm willing to hear from

19   plaintiffs on this.  There doesn't seem to be a downside.

20            MR. CONKLIN:  Sure, your Honor, we're happy to,

21   you know, adjourn if that's what the Court thinks is

22   necessary. But, in short, I think that the letter says our

23   case, that the Welsh Act allows for subpoenas on United

24   States citizens residing in foreign countries so long as it

25   complies with Rule 4(f) and we meet the criteria for
```

```
 1                        PROCEEDINGS                    4
 2   service under Rule 4(f)(3). It doesn't require a party to
 3   serve process by the Hague Convention or assent to do so
 4   before the Court permits alternative service.  And I think
 5   that we have grounds for alternative service here,
 6   particularly in light of the conversations with defendant's
 7   counsel about their willingness to accept the subpoena on
 8   his behalf in exchange for delaying his deposition, which
 9   was later rescinded after we had already postponed the
10   deposition. But he's as relevant witness, his testimony is
11   important to defendant's defenses that the plaintiff was
12   terminated for performance reasons and for making an
13   insufficient contribution to Scholastic.  And his testimony
14   will speak to the quality of her work, explain the
15   circumstances of him and plaintiff no longer working
16   together as editor and author, which we think is --
17            THE COURT:  If I can just -- I mean, I don't want
18   you to repeat the application in the letter, which I assure
19   you I've read. I'm asking a process question; and if your
20   answer to the process --
21            MR. CONKLIN:  Oh, understood.
22            THE COURT:  -- question is my application is so
23   obviously good, there's no need to hear any opposition
24   because there's no possible opposition, I'm basically
25   rejecting that because I can say that about every motion
```

```
 1                      PROCEEDINGS                    5

 2   that arrives on my desk. If you read just one side --

 3             MR. CONKLIN:  No, I think --

 4             THE COURT:  -- it looks like a sure winner.  So --

 5             MR. CONKLIN:  Understood.

 6             THE COURT:  -- it sounded like you didn't have an

 7   objection to the process.  Who is this person, by the way?

 8             MR. CONKLIN:  We did not -- Mr. Pilkey or his

 9   counsel that's not on the call today?

10             THE COURT:  No, who is he or she?

11             MR. CONKLIN:  Dav Pilkey is a children's book

12   author --

13             THE COURT:  No, no, no, no.  Who is the counsel

14   for this person?  Someone says this person --

15             MR. CONKLIN:  Mr. Warshaw may be able to speak to

16   that.

17             MR. WARSHAW:  Thank you, your Honor. And just by

18   way of background, I provided the contact information for

19   the representative back in December of last year. His name

20   is Jamie Coghill, C-o-g-h-i-l-l.  And, certainly from the

21   defendant's perspective, no objection to adjourned --

22             THE COURT:  Is that a he or a she?

23             MR. WARSHAW:  It's a he, it's a he.

24             THE COURT:  And is he with a firm?

25             MR. WARSHAW:  He is. I believe it may be a solo
```

```
 1                           PROCEEDINGS                    6

 2  practice.  But I can, if you give me one moment, your

 3  Honor -- I apologize. I don't have it at my fingertips.

 4  Yes, he is. It's Surpin, S-u-r-p-i-n, Mayersohn, M-a-y-e-r-

 5  s-o-h-n, and Coghill, C-o-g-h-i-l-l, LLP.

 6            THE COURT:  What's his last name?  I'm sorry,

 7  spell it again.

 8            MR. WARSHAW:  Sure. It's Coghill, C, as in cat,

 9  o --

10            THE COURT:  C-o-g-h-i-l-l?

11            MR. WARSHAW:  C-o-g-h-i-l-l, correct. And it's J-

12  a-m-i-e.

13            THE COURT:  Do you have a phone number there?

14            MR. WARSHAW:  Yes. It's 310-552-2407.  That's his

15  office number.

16            THE COURT:  Did you inform him of this proceeding

17  today?

18            MR. WARSHAW:  I did.  And in the interest of

19  candor, I spoke to him as recently as this morning. He was

20  aware of it, also aware that he wasn't directed to appear.

21  There was no, you know, no attempt to hide the ball, but --

22            THE COURT:  I'm just going to call him and see if

23  he's interested in appearing. So just stay on the line. I'm

24  going to use another phone here. You'll probably hear some

25  of it.
```

```
 1                    PROCEEDINGS                    7

 2              [Judge places phone call as follows.]

 3              THE COURT:  Mr. Coghill? Hi. It's Judge Gorenstein

 4    in the Southern District of New York. How are you?

 5              Okay, good. I know you're not expecting this call.

 6    We're on the record right now in the case of Verburg

 7    against Scholastic, where the plaintiff is seeking

 8    Mr. Pilkey's testimony. So here's my question. We have a

 9    couple of choices. One is we can deal with the application,

10    which is for alternative service -- I think you're aware of

11    it -- without your involvement; we can have you write a

12    letter and reconvene our conference; you can dial into our

13    conference right now and say whatever it is you want to

14    say.  Which of those do you like?

15              Okay.  Do you want me to give you the three

16    choices again?

17              Okay, I'll do it over again.  The plaintiff in

18    this case is seeking the testimony of your client,

19    Mr. Pilkey.  And the issue now is should alternative

20    service for a subpoena be permitted; you know, any issues

21    about, you know, relevance or burden or anything else,

22    that's reserved for a later time, if you wish.  That's the

23    only issue before me. I'm in the middle of a conference

24    right now. It's been suggested that I should seek your

25    participation.  And you have three choices. You can say,
```

```
 1                        PROCEEDINGS                    8
 2  "You know what, you do whatever you want to do, Judge,
 3  based on your record, and I don't need to participate." You
 4  can say, "I would like to participate, and I'd like to file
 5  a letter in advance in response to the application and then
 6  be heard at a conference later on." Or you could dial into
 7  the conference right now and do whatever it is you want to
 8  do orally.
 9            Well, it might matter, actually. Well, that may
10  affect -- by the way, the other sides, I don't think they
11  can hear your response. You just said -- hold on, hold on,
12  hold on.  The other side is listening to me, but I don't
13  think they can hear you.
14            And what Mr. Coghill said is that he's not
15  admitted to practice in New York or before this Court, I
16  assume.
17            So, anyway, go ahead. Right. It doesn't really,
18  because I would admit you *pro hac vice* if you wanted to be
19  admitted, I mean, just for this proceeding, so that -- I'm
20  not -- I guess yes, you would in a sense. I could consider
21  you *amicus curiae*, I suppose.  You know, if you did appear,
22  just so you know, I would probably ask you about your
23  contract with Mr. Pilkey because that might affect how I
24  authorize any alternative service.  But it's completely
25  your choice. It's no problem if you don't want to -- hold
```

1                             PROCEEDINGS                     9

2    on. I'm going to finish. Let me just finish. It's no

3    problem if you simply don't want to appear at all. It's no

4    problem if you want to think about it and get back to me,

5    although I won't give you very long to think about it

6    because I kind of have to move my case along. It's no

7    problem if you just want to get on the line and talk it out

8    further on the record.  So what do you think?

9            Communicate the email through his wife. Okay.  And

10   he's responsive to your email? Through his wife. Okay. All

11   right. Thank you. That's very helpful to us.

12           Okay. But in terms of my three choices, would you

13   rather just stay out of it, then; is that what you're

14   telling me?

15           Okay.  And you don't want to get on the record and

16   say all this?  Because there would be a little -- because I

17   don't think I can really consider what you're saying now

18   unless you're on the record saying it.  So the thing I am

19   going to consider, just so you know, and I'm going to

20   repeat it on the record now, is that you have no contact

21   with him by phone or mail; the only way you have contact

22   with him is by email.  The email is actually to his wife,

23   and his wife's email address, right -- his wife's -- you

24   contact him through his wife's email address.  She is

25   responsive to your emails, and she purports to be

```
 1                        PROCEEDINGS                10
 2  responding on behalf of Mr. Pilkey; is that right?
 3          Okay. Yes -- I just got a yes from him.  So that
 4  part now is on the record, and that is part of our record.
 5  I just want you to know that.  But the other stuff in terms
 6  of, you know, due process and your views on that, I'm not
 7  going to consider that because you're not willing to appear
 8  on the record.
 9          Okay. All right. Anything else that you want to
10  say to me? This has been very helpful.
11          Okay. Okay. Okay. Thank you so much. I appreciate
12  it. Okay. Bye-bye.
13          [End telephone call.]
14          THE COURT:  Okay, folks, obviously you heard
15  everything I said.  Were you able to hear what he was
16  saying?
17          MR. CONKLIN:  No, your Honor.
18          MR. WARSHAW:  We weren't able to.
19          THE COURT:  I repeated everything material and --
20  at least that I'm considering. He did not want to appear,
21  he did not want to file a letter.  So we don't need to
22  adjourn the conference, so that's good.
23          And I guess I've essentially heard plaintiff on
24  their application because I read their letter, and they
25  were making the same arguments just now.
```

```
 1                      PROCEEDINGS              11

 2           Anything the defendant wants to say?

 3           MR. WARSHAW:  No, your Honor. I was just pointing

 4  out, but I think it's probably moot, but just that

 5  plaintiff to have Mr. Coghill's contact information,

 6  obviously, he's responsive to picking up the phone.  And,

 7  you know, my understanding is he'd never reached out to

 8  him.  So I just say that to put on the record as further

 9  information.

10           THE COURT:  Have you had any direct contact with

11  Mr. Pilkey?

12           MR. WARSHAW:  Your Honor, I have not. And, you

13  know, I can explain of further explain the representation

14  as to accepting service. It was a misunderstanding through

15  telephone, regrettable, something that I wish I could take

16  back or undo because I know it's caused additional strain

17  on this.  But the intent all along from defendants has been

18  to try to facilitate in good faith to the extent that we

19  can; but, obviously, Mr. Pilkey isn't represented by my

20  firm and is pretty clearly not under defendant's control.

21           THE COURT:  Okay.  So you've never had direct

22  contact with him or his wife?

23           MR. WARSHAW:  I have not, your Honor.

24           THE COURT:  Okay. All right. Okay.  So I'm going

25  to grant the application. I think there's not the least bit
```

1                          PROCEEDINGS                    12

2    of doubt that Mr. Coghill was able to contact Mr. Pilkey,

3    given his statements to me. So I'll issue an Order that

4    provides for alternative service in the Rule 45 subpoena on

5    Mr. Pilkey. And I'll probably --

6              MR. WARSHAW:  Your Honor, in the --

7              THE COURT:  -- get that out today.

8              MR. WARSHAW:  This is Aaron Warshaw. I apologize.

9    And it may be a technicality, but part of defendant's

10   response letter was that the alternative service should be

11   directed to Mr. Coghill, not Ogletree. Obviously, he --

12             THE COURT:  That's my plan.  That's my plan.

13             MR. WARSHAW:  Okay. Thank you, your Honor.

14             THE COURT:  All right. Do you have -- I assume you

15   have -- I mean, I have a phone number; we just got it on

16   the record. I assume you have an email address, somebody,

17   for this person?

18             MR. WARSHAW:  This is Aaron Warshaw. I do, and

19   I've provided it to the plaintiff's counsel, and I'm happy

20   to send it again.

21             THE COURT:  Okay, and there's a street address for

22   his firm?

23             MR. WARSHAW:  Correct, your Honor.

24             THE COURT:  Okay, so I'm going to issue an Order

25   that requires service by all three means, phoning him -- I

```
 1                          PROCEEDINGS                    13
 2   mean, well, let me put it this way. I guess you can't serve
 3   by phone. Service by email and by mail, but also require
 4   that a phone call be made indicating that an email was sent
 5   and that the subpoena was mailed.  And you should also
 6   include a copy of my Order.  If it hasn't come out in the
 7   next day or two, you'll send me a letter reminding me.
 8              MR. CONKLIN:  Understood, your Honor.
 9              MR. WARSHAW:  Thank you, your Honor.
10              THE COURT:  Anything else from the plaintiff's
11   point of view?
12              Let me just -- I don't want to repeat it in the
13   Order; let me just give my reasons or potentially the
14   reasons that were outlined in the plaintiff's letter. I've
15   written on this issue; I think it's cited by somebody.
16   *Elsivere v. Yi Chu*. Is that my case?
17              MR. CONKLIN:  Yes, your Honor.
18              THE COURT:  It sounds familiar. Okay. Good. *NGLG*
19   *Life Tech*, I've also -- that I know is my case. There's
20   nothing that requires anyone to exhaust some other remedy,
21   and Hague Convention service isn't possible here.  By the
22   way, this is for plaintiffs, in your letter, page 4 of 5,
23   paragraph at the bottom that says "second." Do you see
24   that?
25              MR. CONKLIN:  Yes.
```

THE COURT:  Do you see the second sentence, "While Japan has objected to service by email," did you mean email or did you mean something else?

MR. CONKLIN:  I meant mail.

THE COURT:  Okay.

MR. CONKLIN:  Plaintiff certainly has not objected to service by email.  Apologies, your Honor.

THE COURT:  Okay. No problem.

So, as I said, nothing in Rule 4(f) requires a party to use Hague Convention service -- it wouldn't even be possible here because we don't have an address for this individual. There is no international agreement that prohibits alternative service that anyone has pointed to. I think there's certainly due process here because I haven't the slightest doubt that Mr. Coghill will transmit to Mr. Pilkey this subpoena, and it seems to be the only way to serve a subpoena on him.

Now, just as a matter of belt and suspenders, Mr. Pilkey, I assume, still has a relationship with your client, Mr. Warshaw, in terms of an editorial relationship?

MR. WARSHAW:  He does, your Honor.

THE COURT:  Are they in communication with him?

MR. WARSHAW:  The same method that Mr. Coghill described, in writing --

```
 1                        PROCEEDINGS              15

 2              THE COURT:  Well, wait a minute. Hold on.  Stop,

 3     stop. I haven't asked for the method.  Are they in

 4     communication with him?

 5              MR. WARSHAW:  They are, your Honor.

 6              THE COURT:  Okay, and is it someone like an

 7     editor, someone in their royalty office; who is it who's

 8     communicating with him that you know?

 9              MR. WARSHAW:  Editors, your Honor.

10              THE COURT:  Okay. I think to really wrap this up,

11     I'm going to order one of your clients to accept service

12     and send it to him.  So do you want to give me the name of

13     an editor who's in contact -- or you know what, I can just

14     do the corporation.

15              MR. WARSHAW:  That's fine, your Honor.

16              THE COURT:  Who -- I assume that you would be

17     willing to pass along to the appropriate person at your

18     client who is in communication with him my  Order?

19              MR. WARSHAW:  That's correct, your Honor. Most

20     likely, it would be Ms. Berger, who's an individual

21     defendant. But I don't want to commit to that. So, you

22     know, to the extent that the Order indicates Scholastic,

23     I'll -- obviously, the Order will be followed that either

24     Ms. Berger or someone else that Scholastic thinks is --

25              THE COURT:  Is he currently publishing with you?
```

```
 1                      PROCEEDINGS                 16
 2            MR. WARSHAW:  He is, your Honor.
 3            THE COURT:  Okay, and do they send -- are they
 4   responsible for providing royalty checks to him -- royalty
 5   payments to him?
 6            MR. WARSHAW:  I assume so, your Honor. I don't
 7   have direct knowledge, but I presume so.
 8            THE COURT:  Okay.
 9            MR. WARSHAW:  I do know, your Honor, that
10   Ms. Berger and/or other editors would be in contact with
11   him through the email address that his wife maintains.
12            THE COURT:  Okay. All right, that provides an
13   additional basis. And my Order's also going to direct
14   service of the subpoena on Scholastic for transmission to
15   Mr. Pilkey.
16            All right, and you're accepting service on behalf
17   of Scholastic, right, Mr. Warshaw?
18            MR. WARSHAW:  I am, your Honor.
19            THE COURT:  Okay. All right, I think I've given
20   the reasons, so I'm just going to issue a barebones Order.
21            Anything else on the plaintiff's side?
22            MR. CONKLIN:  No, your Honor.
23            THE COURT:  Anything from defendant?
24            MR. WARSHAW:  No, your Honor.
25            THE COURT:  Okay. Thank you, everyone.
```

```
 1                          PROCEEDINGS                    17

 2            MR. WARSHAW:  All right, thank you.

 3            MR. CONKLIN:  Thank you.

 4            THE COURT:  Good-bye.

 5            (Whereupon, the matter is adjourned.)

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

18

C E R T I F I C A T E

I, Carole Ludwig, certify that the foregoing
transcript of proceedings in the case of Bonnie Verburg v.
Scholastic Inc., Docket #19-cv-10837-JGK-GWG, was prepared
using digital transcription software and is a true and
accurate record of the proceedings.


Signature_____*Carole Ludwig*_____

                    Carole Ludwig

Date:     April 1, 2021